BRADLEY et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10079.

United States Court of Appeals Seventh Circuit.

Oct. 26, 1950.

Herbert E. Bradley, Morton John Barnard, Chicago, Ill., for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, S. Walter Shine, F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This appeal involves deficiencies in individual income tax redetermined against petitioners for the years 1942, 1943 and 1944.

The questions in this case are:

1. Whether the Tax Court erred in affirming the disallowance by the Commissioner of Internal Revenue of amounts deducted by taxpayer from gross income for the years in question on three old apartment houses as accelerated depreciation or amortization under § 23(l) of the Internal Revenue Code. Revenue Act of 1942, c. 619, 56 Stat. 798, 26 U.S.C.A. § 23(l).

2. Whether the court erred in granting the Commissioner's claim for increased deficiencies for 1943 and 1944 on the ground that depreciation deductions were not al-

lowable with respect to certain farm buildings.

The Internal Revenue Code, as amended, provides that in computing net income for federal income tax purposes there shall be allowed as a deduction from gross income a reasonable allowance for the exhaustion, wear and tear—commonly referred to as depreciation—including a reasonable allowance for obsolescence, of property used in the taxpayer's trade or business, or property held for the production of income. The basis upon which such allowance is to be computed is the same as the adjusted basis provided in § 113, 26 U.S.C.A. § 113, for computing the gain or loss on the sale or other disposition of such property. See § 114(a), 26 U.S.C.A. § 114(a). So far as material here, § 113(a) provides that the basis for computing such allowance shall be the cost of such property, except that in the case of property acquired before March 1, 1913, if the basis as otherwise adjusted under the section is less than the fair market value of the property on March 1, 1913, then the basis shall be the fair market value on that date.

As to the first question the controlling facts briefly stated are that prior to March 1, 1913, taxpayer, at an aggregate cost of $135,750, acquired three apartment buildings in the city of Chicago. The separate costs of each of the buildings prior to March 1, 1913 were the same as their respective fair market values on March 1, 1913, except that in 1934 an addition to one of the buildings had cost $6,000. The areas in which the buildings are located have become low rental areas and the gross rentals have decreased from the peak years of productivity, but during the tax years they were operated for profit and produced substantial gross rentals. Taxpayer operated the buildings throughout the tax years and in subsequent years, and in 1946 and 1947 sold two of the buildings at a profit. The Commissioner estimated the useful life of the buildings as forty years. For the year 1920 and thereafter through 1941, taxpayer, in his income tax returns, claimed and was allowed depreciation deductions at the rate of 2.5% or 3%, based on an estimated useful life of forty years, so that at the end of 1941 the total depreciation sustained was in excess of 80% in the case of each building.

Beginning with 1942 and for the three years here involved, he claimed an additional amount which he characterized as "amortization." For 1942 and 1943 he claimed depreciation on these buildings at the rate of 2.5%, plus an additional amount computed at the rate of 2% for "amortization." For 1944 he deducted depreciation on the buildings at the rate of 3%, plus an additional amount computed at the rate of 3% as "amortization." In determining the deficiencies, the Commissioner allowed depreciation deductions for all three years at the rate of 2.5%, and disallowed all in excess of that amount.

Deductions are a matter of grace, and the burden is on the taxpayer affirmatively to prove his right to the deductions claimed. Here, taxpayer concedes that the basis upon which depreciation is allowed as a deduction in computing net income is the cost of the property, with certain adjustments required by the statute. He does not contend that the Commissioner's estimate of the useful life of the buildings was improper, nor does he challenge the basis used for computing the depreciation. He asserts that we have the right to grant accelerated depreciation or obsolescence at any time during the life of the building, and that when buildings are operated at a loss and there is not sufficient income to meet depreciation, then the buildings cease to be an asset and their useful and economic life can be definitely determined. He does not point to any facts in this record upon which such an allowance can be made, except to say that because of the enactment of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., he was not permitted to increase the rents, and as a result he was unable to expend sufficient funds to keep the buildings in proper repair and thereby they became obsolete and depreciated more rapidly, and that the 40-year period must be shortened and the depreciation increased.

Obsolescence is the state or process of becoming obsolete, and obsolete means no longer in use. Detroit & Wind-

sor Ferry Co. v. Woodworth, 6 Cir., 115 F.2d 795, 797. But the mere loss of revenue does not suffice as a ground for allowing accelerated depreciation. Southeastern Bldg. Corp. v. Commissioner, 5 Cir., 148 F.2d 879. In order to secure a deduction for obsolescence, the taxpayer must prove that the useful life of the property has been shortened, and that the deduction which covers the ordinary wear and tear will not be sufficient to restore the cost of the property before its usefulness is at an end. Virginian Hotel Corp. of Lynchburg v. Helvering, 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561, and Southeastern Bldg. Corp. v. Commissioner, 5 Cir., 148 F.2d 879.

■ In our case, as already noted, the buildings were operated for profit and produced substantial gross rentals. In 1946 and 1947 two of the buildings were sold at a profit. The Tax Court stated it could not find that the properties had reached the end of their economic life or that there was any basis which would warrant a finding that the physical life of the buildings would be shorter than that originally anticipated. In this state of the record, the Tax Court did not err in sustaining the disallowance of the amounts claimed as accelerated depreciation and obsolescence.

As to the second question. In his 1942 and 1943 returns, taxpayer reported $11,000 as the cost of his farm buildings, and he deducted depreciation thereon at the rate of 2.5%. In his return for 1944 he deducted depreciation at the rate of 3% and, in addition, 3% for additional depreciation and obsolescence. The Commissioner allowed depreciation at the rate of 2.5%. Before the Tax Court the Commissioner claimed increased deficiencies for 1943 and 1944 under § 272(e) of the Internal Revenue Code, 26 U.S.C.A. § 272(e), on the ground that taxpayer was not entitled to deduct depreciation on the farm buildings.

■■ As we have shown, depreciation is allowable under § 23(l) only on property used in taxpayer's trade or business or property held for the production of income. The statute does not authorize a deduction for depreciation of property devoted exclusively to personal use. The Tax Court held that the Commissioner had failed to bear the burden of proving taxpayer was not entitled to any depreciation, and that taxpayer had failed to meet his burden of proving that he was entitled to a greater deduction for 1944 than that allowed by the Commissioner. It found that the farm buildings, with the exception of the building used by Mrs. Bradley as a studio in her profession as a writer, were devoted to taxpayer's personal use. Accordingly, it ordered recomputation of the deficiencies on this basis. Without going into the details of the evidence, it will be enough to say that we would not be warranted in saying that the findings and conclusion of the Tax Court are clearly erroneous.

■ We conclude that the decision of the Tax Court must be affirmed. In reaching this conclusion we have not overlooked taxpayer's argument that it was error to introduce evidence showing the sale of two of the properties in 1946 and 1947. There is no merit in this contention.

Affirmed.