**BLOOMINGTON COCA-COLA BOTTLING CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10339.

United States Court of Appeals Seventh Circuit.

May 28, 1951.

Ralph H. Schuette, Schuette & Taylor, Paducah, Ky., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Richard D. Harrison, L. W. Post, Sp. Assts. to the Atty. Gen., for respondent.

Before KERNER, LINDLEY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

The question presented by this petition for review is whether the Tax Court correctly upheld the Commissioner's determination that in 1939 the taxpayer sustained a loss upon the sale of real estate which did not come within the scope of § 112(b)(1) of the Internal Revenue Code, 26 U.S.C.A. § 112(b), but was recognizable under § 112(a) thereof for the purpose of computing its excess profits tax credit based on an average base period net income.

The Tax Court held that the transaction was not an exchange protected from tax impact by § 112(b)(1) but was a sale which resulted in a recognizable loss. In this court taxpayer claims "no error with respect to the findings of facts of the Tax Court, but alleges that the Tax Court erred in applying the law to those facts." It makes the point that the payment of $64,500 cash in addition to the transfer of an old bottling plant as consideration for the construction of a new plant did not remove the transaction from the purview of § 112 (b)(1) of the Revenue Act of 1938.

The material facts are that in 1930 taxpayer, at a cost of $36,000, acquired a bottling plant in Bloomington, Illinois—allocating $30,500 to buildings and $5,500 to land. In 1938, concluding that the plant was inadequate for its needs, taxpayer decided to build a new plant. It decided it had no use for the old plant and wished to dispose of it. With those purposes in mind, it entered into a contract with a contractor to construct a new plant. The new plant was completed in 1939. By the contract the contractor furnished the necessary material and labor, and completed the building in accordance with the plans and specifications prepared by its architect for a total of $72,500. Of this sum the contractor was paid $64,500 in cash and accepted taxpayer's old buildings and the land upon which the old plant was located at a valuation of $8,000, and the old building and land were transferred to the contractor.

Taxpayer, in its 1939 income tax return, reported the transaction thusly:

| | |
|---|---|
| Lot, Cost July 1930 | $ 5500.00 |
| Sold April 30, 1939 | 1424.55 |
| | |
| Loss | 4075.45 |
| Limitation | (2000.00) |
| Building, Cost July 1930 | 30,500.00 |
| Depreciation on building to April 30, 1939 | 5,113.21 |
| | |
| Net book value April 30, 1939 | 25,386.79 |
| Sold April 30, 1939 | 6,575.45 |
| | |
| Loss | $18,811.34 |

Schedule B of taxpayer's 1943 and 1944 excess profits tax return shows the 1939 base period excess profits net income as follows:

1. Normal Tax (or special class) net income    $ 2,278.25
2. Net capital loss used in computing line 1    2,000.00

\*   \*   \*   \*   \*   \*

4. Net loss from sale or exchange of property other than capital assets deducted in computing line 1 (for taxable years begining after December 31, 1937)    $18,811.34

\*   \*   \*   \*   \*   \*

31. Excess profits net income    $23,089.59

The Commissioner in determining the excess profits taxes for the years 1943 and 1944 adjusted the average base period net income for the year 1939 as computed by the taxpayer by deducting the amount of $22,886.79 as a loss not coming within the scope of § 112(b)(1) of the Internal Revenue Code. This resulted in a deficiency of $8,049.19 in 1943 and $8,492.13 in 1944. The taxpayer contested this determination. The Tax Court, finding the facts in detail, sustained the Commissioner.

The Commissioner's determination and its approval by the Tax Court that taxpayer's disposition of the old plant constituted a sale and not an exchange of property for like property must be considered as prima facie correct, and the burden of proving it wrong is upon the taxpayer. We may not reverse the decision unless we can say the decision is clearly erroneous.

It is elementary that the language of a revenue act is to be read in the light of the practical matters with which it deals and is to be given its ordinary significance in arriving at the meaning of the statute. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484.

The applicable statute, 26 U.S.C.A. § 112, provides:

"§ 112. Recognition of gain or loss—

\* \* \* \* \* \*

"(b) Exchanges solely in kind—(1) Property held for productive use or investment. No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

And Treasury Regulations 111, § 29.112 (a)–1 states that to constitute an exchange within the meaning of § 112(b)(1) the transaction must be a reciprocal transfer of property as distinguished from a transfer of property for a money consideration only.

A "sale" is a transfer of property for a price in money or its equivalent. "Exchange" means the giving of one thing for another. That is to say, in a sale, the property is transferred in consideration of a definite price expressed in terms of money, while in an exchange, the property is transferred in return for other property without the intervention of money. True, "Border-line cases arise where the money forms a substantial part of the adjustment of values in connection with the disposition of property and the acquisition of similar properties. The presence in a transaction of a small amount of cash, to adjust certain differences in value of the properties exchanged will not necessarily prevent the transaction from being considered an exchange. \* \* \* Where cash is paid by the taxpayer, it may be considered as representing the purchase price of excess value of 'like property' received." 3 Mertens, Law of Federal Income Taxation, § 20.29, pp. 143, 144.

But this is not a case where the contractor exchanged a completed plant owned by the contractor for property and money, hence the contractor at no time had like property within the meaning of § 112 (b)(1) of the Revenue Act. Under these circumstances we would not be warranted in saying that the finding and conclusion of the Tax Court are clearly erroneous. On the contrary, we think the facts adequately support the Tax Court's conclusion that the taxpayer's disposition of its old plant constituted a sale.

Another contention urged is that the loss which was incurred by taxpayer in 1939 on its disposal of its old bottling plant must be disallowed under the provisions of § 711 (b)(1)(E), 26 U.S.C.A. § 711(b)(1)(E) on the ground that the property was abandoned. This section provides that deductions for abandonment of property shall not be allowed in the computation of excess profits net income for the base years. And § 29.23 (e)–3 of Regulations 111 provides that when, through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated so that a taxpayer discards such assets permanently from use in such business, it may claim a loss as prescribed.

In considering the contention that the property had been abandoned it will be enough to say that we agree with the Tax Court: "The old plant was sold for a consideration of $8,000 \* \* \*; it was not abandoned. There are no facts established justifying a finding of abandonment, or that the loss was due to obsolescence. The old plant was an operating plant at the time petitioner [taxpayer] moved to its new building, and its use as a bottling plant could have been continued. The testimony \* \* \* was not that the plant was aban-

doned, but that its sale was determined upon. A claim of loss consequent upon the abandonment of property must be supported by clear and convincing proof of intention to abandon and discard the property [citing case]. The record contains nothing to sustain the argument of abandonment, and the facts established are to the contrary. See Hygrade Food Products Corporation v. Commissioner, [2 Cir.] 144 F.2d 115."

Affirmed.